The next and final case for argument is 23-1053 Medtronic v. Speyside Medical, LLC Well, I don't feel like I need to apologize, but I do think you guys, you folks, you lawyers, learn more about labor law and business law this morning than you ever thought possible. So I do apologize for taking so long. Good afternoon, Your Honor, and it's a pleasure to hear about other areas of law that we don't normally hear about. We're happy to get back to patents. Well, may it please the Court, Jim Davis for Medtronic. While the Board here below properly found that certain claims of the 897 patent were obvious over Lane and Lane in view of Thomas, the Board erred with respect to dependent claims 18-22 and 24 in finding that a person of ordinary skill in the art wouldn't have been motivated to apply Thomas' teachings to Lane for those particular claims. The Board collectively relies on three reasons, and thus an error as to any one of those reasons would require vacatur and remand for the Board to consider again. Here, we believe there's error as to each one of those reasons. Okay, so let's start with one, the purpose of the reference, right? What is the error there? Is it your view that you have to look at the overall purpose and you can't pick one little piece of it and one component and go from there? Or is it your argument that they're wrong under substantial evidence in view of the facts? Both, Your Honor. With respect to the first issue that the Board identified, they said that there were certain functions that were primary functions of a particular component, and then they said, well, those are being moved in the proposed modification over to another component, and that, they said, is a reason not to make that modification. That is inconsistent with this Court's law. Those were functions that are still being maintained by the proposed modified device. They weren't disappearing. They weren't going away. They were just being moved from one component to another. So to Your Honor's question, it's not a function of the entire device. It was a function of a particular component that they were weighing, and that was improper for the Board to give it that weight. But they were substantially changing this sheath catheter, and what were they replacing it with in Thomas? Your Honor, they would have the sheath catheter, still the outermost catheter, but they would have an additional sheath jacket that would house the prosthesis. So only a portion of the overall long catheter would actually need to be wide enough to house the prosthesis, and you could have the rest of the catheter be narrower, which, as was cited in the record. Where in your patent and suit do you talk about the advantage of having this extra sheath jacket? In the patent and suit, Your Honor? Yeah, yeah. I have to be honest. I was trying to find out in your patent, like, why you would have it, and I was not really understanding from the patent itself what the advantages were or why it would be desirable. And so I'm just asking, was there a particular spot in the patent? Yes, Your Honor, and just to be clear. I fear about patent order. I will ask the opposing counsel. I'm sorry. It's been a long morning. Okay. You like my question. Okay. I will say that in that outermost catheter, that sheath catheter, is maintained both in Thomas as well as in Lane. And the prior art references, they don't have the sheath jacket. There's like, if you would, two levels of tubing or whatever, if you will, and the proposed combination is to add a third, right? So, Your Honor, the Lane reference has four concentric catheters, but the two that we're talking about were the sheath catheter and the bell catheter, and what we're talking about doing is expanding the bell catheter to be the particular catheter that would house the prosthesis. Lane actually, or excuse me, Thomas actually has the exact same setup, where you have an outermost catheter, which we're relying on as the introducer, and it has benefits because it protects the surrounding vasculature from all the movement that would happen inside of it. And then you would have a separate one-layer-down catheter that is just a sheath jacket that would hold the prosthesis itself. Why would you have that? The benefit that... To protect the device itself? It protects the device. It allows for the release of the device from that, but you need to have something kind of protecting that device as you deliver it through the vasculature to get it to the delivery point in the heart. So given that, the benefit that Thomas adds on is, well, do you need to have the entire thing to be that thickness, or do you just have the very end be that thickness? And we cite several references that talk about benefits of having a low profile, particularly at the entry point into the body where the catheter is being delivered, and that, by what the references say, is you reduce the risk of bleeding when that is a smaller profile. And it maintains the advantage of creating the piercing stiffness, right? Yes, Your Honor. That did not change at the introduction of Thomas. So is it your position that this is more of the evidentiary than a legal question, but that it was a give-and-take, and maybe this is a subcomponent or a component, and, yes, we modified it some, so some of the stuff it did it might not do, but other stuff it continued to do, and it had other advantages? I don't know. Exactly, Your Honor. But the board didn't really reach that. I mean, the board kind of decided this case over here, right? It stopped short, Your Honor. That's correct. Yeah. So you're advocating a remand so that the board can evaluate the kinds of stuff that you've been talking about here? That's correct, Your Honor. And I think also applying the proper legal construct for it as well. Did the board look at you've got at page A41 of the board's decision? It says petitioner submits that claiming team is obvious or relating Thomas because, and then gives a reason to combine. Am I correct in understanding that that wasn't really discussed? Correct, Your Honor. The board does summarize the parties' briefings back and forth, but then when it gets to its decision, it just says, all right, we agree with Pat and Erna for these three reasons. The first one was your team. But Pat and Erna gave those reasons. It's not as if you were surprised by them, right? That's correct, Your Honor. We had gone back and forth on those reasons, although they were tweaked in the way in which the board characterized them. The board is characterizing them as these primary functions of a component. I think that's inconsistent with this court's law in that they're elevating that to some higher showing that you can say, well, you're moving a function from one component to another. This court's precedent hasn't said that. What if the board had said, we're viewing all of this as factual issues,  let's say that they had analyzed your reason for the motivation to combine, which I don't see that they've done, but let's say they had. But they also said, on top of that, we're not convinced because we find that, you know, just looking at all these different facts, it seems to us that the primary purpose of the prior art would have been disregarded with this combination. Would that be okay so long as they made it more factual and actually also relied on the KSR of empty deer factors? Your Honor, I think the board does need to do a weighing, and they didn't do that here. But what's also important is they need to apply the law correctly. They rely on this principle of operation law, which, as this court has recognized, indicates that if you're changing a principle of operation, it's unlikely to motivate a change. Here, what the board identifies as a principle of operation was just one disclosed embodiment, a preferred embodiment in the spec. There's nothing in the spec of Lane saying that also your claim, you have claims that didn't recite that. That's exactly right, Your Honor. This two-step functionality that they're saying is the principle of operation here isn't recited in the claims. And as I think Your Honor might be referring to in Ray Urbanski, this court considers that. It's not like we needed to have the two steps in order to meet the claims, but the board found that's a principle of operation. Simply because something is desired or identified as preferred in the prior art doesn't mean that that's a principle of operation. Instead, it needs to rise to something beyond that. Plaspec, for example, said this specification was rife with examples of how the invention was this particular principle of operation that was being changed. That situation isn't present here in Lane. And that kind of takes us to the board's first two reasons. The third reason that the board identified was, Well, we find that other modifications would be obvious instead. Why don't we just get rid of the sheath catheter entirely? But again, that's not the test, as this court has repeatedly found. Yeah, I actually didn't understand what they were saying in that. What was the case? What cases are they relying on for that? They don't cite one, Your Honor, and I don't think one exists, at least none that have been cited here. But you're talking about where they say there's no reason to make the proposed modification because the modified device wouldn't serve its primary purpose? Or is this a different case? This is the third one, Your Honor. At the very end, they have a separate paragraph saying, and this is for reference, it's on Appendix... 45, maybe? I think that's right, Your Honor. There's no black-letter law. I don't think we've said either way. We haven't said that redundancy is never relevant to obviousness. I mean, that's not black-letter law either. It's just the circumstances of this case. Can't we think of circumstances where maybe it might be relevant in terms of establishing whether or not there was hindsight or something? Sure. This situation isn't one where the board was saying it would be redundant. The board was saying this other change would be obvious, that you would just eliminate this outermost catheter entirely. And with respect to that, the support in Par Pharmaceuticals and Infinium have repeatedly said simply because there's other options, the proposed modification doesn't need to be the best option. It just needs to be an option that would have been obvious. That's the test. You're in rebuttal time, so unless the judge still has anything, this is just, I've allowed things to go on too long. You're bearing the brunt of that. Why don't we get to the other side? Thank you, Your Honors. May it please the Court. Derek Schaefer here on behalf of the Pele Space Side. Your Honors, I do think that Medtronic here is largely splitting hairs with factual determinations that the board made. Well, let me ask you, is the board's primary purpose rationale one that is recognized in our law at all? And if so, what are the cases that establish that? Your Honor, looking at obviously motivation to combine, would the person of ordinary skill in the art have had that motivation? And per KSR, that's a common sense inquiry. And I think both parties agree. There are a lot of cases that stand for the proposition that if the primary function is no longer being accomplished, that's relevant to the motivation. And here what the board was saying, focusing on, after all, the sheet catheter, that's the subject of the proposed combination, it's not just primary function, Judge Prost. It's all of it is lost. That was submitted repeatedly to the board, and there was really no refutation. Well, this is dealing with one component, right? But this wasn't, I don't see any discussion of the invention in its entirety and the purpose of that. They were talking very much about the sheet catheter, right? Yes, Your Honor, but in the context of the overall invention and what the sheet catheter, which again, that is the subject of the combination with Thomas, what it is meant to do. And it's that it has no remaining purpose. That's the board's third rationale that combines them. Okay, well, that's a question maybe of substantial evidence, but I think there is, as the other sides made the case in its brief, that there are plenty of other things done by this sheet catheter that were not changed or evaded by the incorporation of Thomas. And if I may just emphasize, though, when the board is reviewed with deference for the determinations it's made, there was no submission by the other side that the wrong question was being asked, and the parties went back and forth about, would the sheet catheter continue to serve any function? And I can, where this was submitted to the board... Well, we get to review that under substantial evidence. Yes, Your Honor. And you're saying there were no remaining functions. And that was also expert testimony from Mr. Rourke, who was not cross-examined. You can find his submission at JA-7281, paragraph 158. You can find where we made this submission that the sheet catheter would be stripped of all of its described functions at JA-499. We repeated it at JA-609 and 610. And JA-710 at the hearing, where we made this point... I apologize. Sorry. Could you give the site again? Sure, that was JA... Evidence. I got the 499, 609, 610. JA-609, 610. That's the evidence? That was our statement of the evidence from Mr. Rourke, who so testified. And then at the hearing, where the point that the board ultimately credited was made, which is that a person of ordinary skill in the art would have no reason to use sheet catheter 1604 after you've made the proposed modification. And to answer your question, Judge Prost, we're not saying that that's necessarily relevant in every case. We're not saying that that's dispositive, but it is probative. Would a person of ordinary skill in the art have been motivated to arrive at this combination or, in fact, understanding what it is meant to do in the context of when the person of ordinary skill in the art would have said, there is no remaining sheet catheter? Because everyone agrees you want to have the smallest possible profile. You want to have the smallest number of parts. So, in other words, you're saying... The board's opinion is written a little differently than usual, but they could have said alternatively, we don't see how a person of ordinary skill in the art would be motivated to make this change because it would remove some of the reasons for using this sheet catheter. As opposed to, you know, to be honest, it sounds a little different than what we ordinarily see from the board in terms of this primary function, principle of operation, rendering it... Well, the superfluous, to be honest. That's something we see more frequently, I think. Of course, you see many more of these decisions than I do, Judge Stoll. But I would say that as I read the key portion of the board's decision from JA42 to JA46, I read it as saying what Your Honor just said. And it does that by setting forth the arguments that it has from us, specifically that the proposed combination is driven by hindsight and convoluted. They don't use the word hindsight. Well, they have us saying the word hindsight, Judge Stoll. Where is it? JA42. And it's them just repeating your argument? Yes, but then here's what it goes on to do, Judge Stoll, on that same page. It goes on to say we're saying that there are four different steps that need to be undertaken to arrive at the combination, one through four. The board is, I think, agreeing that those are the four steps, and I don't think Medtronic is disputing it. It also notes that we note that there's no persisting function for the sheath catheter. It says that at the bottom. And it notes our argument that the field of operation is changing. All of that's on JA42. And just as you say, Judge Stoll, that is somewhat before the key portions of the board's decision that we're all focused on at JA44 to 46. But that's where the board is explaining why it agrees with the patent owner and disagrees with the petitioner because for the reasons that we're talking about, the bottom line is this is driven by hindsight, and this would not have been obvious to a person of ordinary skill in the art applying the common sense that KSR indicates is critical to this whole analysis. What do you think the reason to combine is here on page A41? To be honest with you, I had a hard time understanding it. I'm sorry, say one more time. What do you think the reason to combine here is articulated on page 8041? How do you understand that? To me, it's a bit circular. I wish the board would have said so. Well, Judge Stoll, I think in seven pages they said a lot, a lot more than you see in other board decisions. I understand the concern is, I mean, you understand what the concern is here of this court. The concern is that this is an unusual-looking way here of expressing hindsight and lack of motivation to combine by perhaps sounding as if they're relying on some per se rules, which would be contrary to KSR. So with that in mind, I just want to know what you think this motivation to combine is trying to get at on page A41.  I struggle to understand it. And what I think they really want to do is take Thomas, because there's something in Thomas that looks like the sheath jacket, and simply inject that into Elaine in a way that is totally anomalous and at odds with the person of ordinary skill in the art, would glean from Elaine. And that is driven by hindsight. And that is circular reasoning. And it is defeating the whole purpose of the sheath catheter in the context of Elaine. Now, those are my words, Your Honor, but I think that they fairly summarize what you have from the board. And I want to focus, if I may, on principle of operation, that second rationale from the board. Now, as to that, Your Honor, we were repeatedly submitting that the principle of operation in Elaine, or one principle of operation, was the two-step deployment process as essential to Elaine. And that was inóyou can seeó Didn't Elaineówasn't all the stuff that the board relied on included as preferred embodiment in Elaine? Only as to the specifics of the two-step deployment process, Judge Prost. There is no question that the sheath catheter was meant to accomplish a two-step deployment process. That could be different in the context of different embodiments, as to how exactly that worked. So the answer to my question is I am correct, that the board was relying only on the preferred embodiment in Elaine. Well, I think that theó I'm not understanding your answer. I'm sorry. Let me be more precise. The answer is no. I don't think you are correct, respectfully. And the reason why is all of the embodiments had the two-step deployment process. Some of those embodiments, as I understand them, would undertake that differently, depending upon precise positioning and use. But in addition, as you review the board's rationaleó I know Your Honors were focused on this in earlier casesó you look at did the board supply a reasoned explanation for dealing with the submissions before it as it did. Now, it was submitted, Judge Prost, to the board, especially because my friends to the other side were relying upon the chief captor. They were relying upon this embodiment that involved the two-step deployment process. That, I think, is clear from the record. We indicated that the two-step deployment process was a principle of operation. That's at JA-499-500. In our SIR reply, it's JA-611. We drove the point of the hearing, JA-711-712. In Mr. Rourke's declaration, again, that's JA-7282. At paragraph 158, he made this point, too, and you can find it, Judge Prost. The key parts of Lane are paragraphs 24 to 31, 128 to 29 that are dealing with this. That's at JA-4318-19 and JA-4327-28. All of that stands for the proposition, Judge Prost, that the two-step deployment process was, in fact, part of Lane's principle of operation. I would point you to the other side's response that you will find in the record, which is JA-55657. And essentially, in a conclusory sentence, they simply assert that the principle of operation is not changing, but they do not deny that the two-step deployment process where the chief captor continues to hold on to the prosthesis to enable that two-step deployment process, that that is, in fact, part of the principle of operation. So the Board, in crediting that substantive point, didn't really have another side to it. There was no reason, justification for concluding any differently, and I believe it's agreed between the parties that, in fact, that two-step deployment process is totally defeated by the proposed combination, Judge Prost. Now, that is a powerful reason why I think the Board was correct to agree with the patent donor and disagree with the petitioner in saying that this is a convoluted, hindsight-driven combination that a person of ordinary skill in the art would not have been motivated to arrive at contemporaneously. And then the other two points that we were talking about, the first and the third that are in the Board's statement of final written decision, those, too, I think, follow from what we were discussing. The chief captor, there's no question it has a specific role to play in latent. And the Board explained from the evidence before it and from the specific, from Lane itself, why, in fact, a chief captor that's being modified the way it was, not able to house the prosthesis the way that Lane teaches, it is not able to dilate the way that Lane teaches, and it doesn't have the ability to puncture the chest cavity the way it is contemplated by Lane. So what would a person of ordinary skill in the art do? They would get rid of the chief captor. That's the third finding that corresponds with the first. So these points that the Board makes, I think, are fundamentally common sense oriented. They're not categorical legal rules. It's not saying that always or never. It's just saying why on the record before it and why, given the arguments before it, it is agreeing with this patent owner over this petitioner in saying that this particular combination, the one that was offered to it by the petitioner, was not, in fact, obvious to a person of ordinary skill in the art. There would not have been motivation to combine. And as to the standard of review, I know my friends to the other side do the best job they can to say that these are legal rules that the Court should review de novo. As we look at this whole section of the Board's decision, I think it is undertaking fact-finding. That's how in every cited decision from us and from Medtronic, this Court has reviewed these sorts of determinations by the Board as to whether a person of ordinary skill in the art would, in fact, have been motivated to combine. So review is for substantial evidence. And review is confined to the record that was before the Board, the arguments that were made to the Board based on that record. And is there substantial evidence in this record to sustain the Board's determination? Yes, Your Honors, including from Mr. Rourke's sworn declaration, expert declaration, and it wasn't cross-examined. And it's your view, and I think opposing counsel agrees based on the briefing, that all three of these reasons go together, that it's not just one of them that's been dispositive of the motivation issue. Is that correct? Judge Stoll, I agree with that, although I have a different gloss on it, I think, than my friends to the other side. That is to say, if you see a line of verbiage as to how the Board framed the loss of primary functions, I don't think that that is fatal to this overall analysis. It is, after all, about would a person of ordinary skill in the art have been motivated to combine. I think they all get reviewed together to see is there substantial evidence underlying them. And I think that the fundamental substance of this, which is that this is convoluted, hindsight-driven, and it is not, in fact, a combination that would have made sense to a person of ordinary skill in the art who is then reading Lane in view of Thomas. That should be reviewed as a whole. And I do think the proof positive of that is that the first and third rationales here really do correspond. The third is what follows from the first. It's precisely because the sheet catheter is being denied its primary functions, indeed resubmitted all of its functions, you wouldn't want to retain it anymore. No, can I just clarify? It's late in the morning for me, so I'm sorry I don't understand your answer. I thought the question, maybe I misunderstood the question, was that if we were to agree with you on point two, but not on point one and three, we would still have to send it back, right? Because it's not clear at all to me, at least in the opinion, that the board would have reached the same result on that one aspect if they were wrong on the other two aspects. I respectfully disagree with that. Okay, so you think if we affirm on any one of those three, you should win? Yes, unless you believe that the result denies the board substantial evidence for its basic conclusion here, which is that a person of ordinary skill in the art would not have been motivated to arrive at this combination because it's driven by hindsight, because it is convoluted, because it is contrary to what the person of ordinary skill in the art would find in Lane and would understand from Lane. And I think all of these drive at that judge post. If you believe that there's no substantial evidence, there's no reasoned basis for the board's conclusion, of course. That means you would vacate and remand. But if the opposite is true and you find substantial evidence, you do find that this is reasoned explanation by the board, then the board has done all the job it needs to do in cases like this where the court defers. Thank you. Thank you, Your Honor. We've got a few minutes of rebuttal if you need it. Yes, Your Honor, thank you. I think we've heard a lot about what Pat and I would have liked the board to have said, but it didn't actually say those things. The board referred to the primary purpose of an individual component, not as the device as a whole, as Pat and I would have it say. The board found that certain functions would be shifted from one component to another on the proposed modification, not that those functions go away entirely. And the outermost catheter, that chief catheter, while Pat and I are saying it has no functions left, the board's findings with respect to Claim 1, which are unappealed here, found that that was the introducer, the thing that was introducing the three other concentrically nested catheters into the body. We repeatedly heard from Pat and I the hindsight again and again, but if you look at the board's opinion, the board only says that once when it's referring to their argument and never adopts it as their own. Pat and I repeatedly cite to the words of one of the judges, the administrative patent judges below, which used that word, oral argument, but that judge, Judge Ankenbrand, withdrew from the panel before the final written decision was issued. Finally, with respect to principle of operation, Your Honor, I think as Your Honor's questions elicited, that purported principle of operation is merely disclosed as a preferred embodiment, not as something that's core or central to the disclosures. That's further thorn out by the fact that if you look at the claims of Lane, Claim 64 and 65, just as an example, which is what the two parties focus on, Claim 64 talks about just pulling back the catheter to release the valve. Claim 65 talks about releasably holding it. Two different options for how you would release the prosthesis, again illustrating this is just optional functionality, not a principle of operation. At base, an error as to any one of those three rationales requires faggoture and remand terror. Unless there's any further questions. We thank both sides of the case system. That concludes our proceedings this morning. Thank you, Your Honor.